**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**UNITED STATES OF AMERICA**       *

**v.**       *       **Criminal Case No. DKC 20-0038**

**ERIC JOHNSON**       *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM ON WHY HE DOES NOT QUALIFY FOR SENTENCING ENHANCEMENTS UNDER THE ARMED CAREER CRIMINAL ACT AND THE CAREER OFFENDER SENTENCING GUIDELINE.

The defendant, Eric Johnson, is scheduled for sentencing on March 24, 2023. The defendant has separately filed the "Defendant's Sentencing Memorandum", under seal, setting forth his position on the applicable sentencing guideline issues and the 18 U.S.C. §3553(a) factors. The defendant files this supplement setting forth the reasons that the Armed Career Criminal Act (ACCA), 18 U.S.C. §924(e), and the associated guideline, U.S.S.G. §4B1.4, and the Career Offender Guidelines, U.S.S.G. §4B1.1; §4B1.2 should not apply to the defendant.

As the Court is undoubtedly aware, issues related to the application of the sentencing enhancements has been the subject of extensive litigation recently, on both the national and district court level. Several judges in the District of Maryland have rendered decisions related to whether the ACCA and career offender sentencing enhancements continue to have vitality in light of recent decisions that have reviewed assumptions about the interpretation of statutory and guideline

1

definitions that lie at the heart of the respective sentencing enhancements.  In many of the cases, courts have resolved that the some bedrock assumptions about the use of predicate convictions to enhance a sentence, regarding both the definition of a controlled substance itself, as well as the drug conduct captured by the enhancements, no longer support some sentencing enhancements.

The litigation in this district has been supported by extensive briefing.  On the defense side the Federal Public Defender for the District of Maryland has been most helpful in assisting many CJA counsel in presenting arguments on these issues.  In light of the extensive litigation, which has tracked the continuing developments in the law on the issues, the counsel relies heavily upon the work of others that has established the framework for the analysis of the issues in Mr. Johnson's case.[1]

## I.      Mr. Johnson Should not be Sentenced as an Armed Career Criminal, Pursuant to 18 U.S.C. §924(e).

The Presentence Investigation Report ("PSR") finds that Mr. Johnson is an armed career criminal pursuant to 18 U.S.C. §924(e) based on three prior qualifying convictions.  PSR ¶47. The PSR does not specifically identify which convictions noted in the criminal history are alleged to be predicate offenses for purposes of the ACCA.  Without conceding any issues with regard to his

---

[1]Counsel is mindful that pending before this Court is *United States v. Shaw,* DKC-21-0336, that presents arguments about why a 2008 Maryland Cocaine Distribution conviction does not qualify as a "Controlled Substance Offense" under U.S.S.G. 4B1.2(b).  Counsel has reviewed those briefs and believes that the same arguments apply to Mr. Johnson's prior convictions. Counsel attributes much of the argument he presents on the Career Offender portion of this supplement to the counsel's presentation in the *Shaw* brief.

contention that he is not subject to the Armed Career Criminal Act § 18 U.S.C. § 924(e)(1) ("ACCA"), Mr. Johnson notes the following potential ACCA predicates identified in the PSR: (1) ¶53 CDS: Manufacture/Distribute Crack Cocaine/Circuit Court of Maryland for Frederick Count, Frederick, MD; Docket No.: 10-K-02-30501 (2003); (2)   ¶54 CDS: Possession with Intent to Distribute Crack Cocaine/Circuit Court of Maryland for Frederick Count, Frederick, MD; Docket No.: 10-K-02-301074 (2003); (3) ¶57 CDS: Manufacture/Distribute Crack Cocaine/Circuit Court of Maryland for Frederick Count, Frederick, MD; Docket No.: 10-K-05-036997 (2005); (4) ¶59 CDS: Possess With Intent to Distribute Crack Cocaine/Circuit Court of Maryland for Frederick Count, Frederick, MD; Docket No.: 10-K-10-049184 (2012).

Accordingly, the PSR finds that Mr. Johnson is an Armed Career Criminal subject to a 15 year mandatory minimum sentence pursuant to 18 U.S.C. §924(e) and the accompanying Chapter Four enhancement, U.S.S.G. § 4B1.4(b)(3)(A)(Armed Career Criminal), which results in a base offense level of 34 and a Criminal History Category of VI.  PSR at ¶47.  With a total offense level of 34 and a Criminal History Category of VI, the advisory sentencing guidelines range would be imprisonment for 262-327 months.  PSR at ¶93.

The Court should reject the PSR's recommended enhancements because Mr. Johnson's prior felony convictions are not predicates under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1). First, Mr. Johnson is not an armed career criminal because as clarified by the Supreme Court in *Mathis v. United States*, 136 S. Ct. 2243 (2016), under *Apprendi v. New Jersey*, 530 U.S. 466 (2000),

the government is required to allege in the indictment and prove to the jury beyond a reasonable doubt that Mr. Johnson had three previous convictions for offenses "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Because the indictment did not allege three previous convictions for offenses "committed on occasions different from one another," this fact and the three prior convictions were not presented to the jury, the Sixth Amendment does not permit this Court to impose an ACCA sentence.

Second, Mr. Johnson's potential ACCA predicate convictions, which are all convictions under either Maryland PWID-crack cocaine or Maryland Manufacture/Distribution crack/cocaine, are not for an ACCA "serious drug offense" because the Maryland definition of cocaine, Md. Code Ann., Art. 27, § 279 (Michie 1995, Supp.), is broader than the federal definition of cocaine under the Controlled Substances Act, 21 U.S.C. § 812(b)(2)—the definition that controls under the ACCA's "serious drug offense" definition. Due to this mismatch, a Maryland cocaine offense categorically fails to qualify as a "serious drug offense."

Third, the Maryland PWID-crack cocaine or Maryland Manufacture/Distribution crack/cocaine are not ACCA "serious drug offense" because the ACCA "serious drug offense" definition only lists completed offenses. The Supreme Court's recent decision in *Shular v. United States*, __U.S.__, 140 S. Ct. 779 (2020) clarifies and reinforces this limitation.

### A.    The Government Concedes that Mr. Johnson should not be Sentenced under the Armed Career Criminal Act.

The government has informed the United States Probation Officer that it does not intend to

seek an ACCA enhancement for Mr. Johnson based on the first ground cited above, that the indictment did not allege three previous convictions for offenses "committed on occasions different from one another," and this fact and the three prior convictions were not presented to the jury. Therefore the Sixth Amendment does not permit this Court to impose an ACCA sentence. Indeed, the government conceded the point in two other cases—*United States v. Watson*, Case No. GLR-18-0537 and *United States v. Keith Bowman*, GLR-18-0628. See **Exhibits 1 and 2**. The government's letters in *Watson* and *Bowman* set forth why ACCA cannot be applied in this case. Counsel agrees with and adopts the position set forth in the letters. Counsel anticipates this will resolve the matter.

Because the government concedes the issue on ACCA, counsel will dispense with including arguments on the remaining grounds set forth above. In any event, the essential issues are covered later in this Supplemental Memorandum, in connection with the arguments about why the Career Offender Guideline should not be applied to Mr. Johnson. Counsel submits those arguments are largely applicable to ACCA as well.

**II.    Mr. Johnson is not a Career Offender under the sentencing guidelines.**

The PSR alleges that Mr. Johnson is subject to sentencing as a career offender under U.S.S.G. §4B1.1. The Maryland convictions for and Manufacture/Distribution crack cocaine (PSR ¶¶ 53, 57 ) and PWID crack cocaine (PSR ¶ 59) fail to qualify as a § 4B1.2(b) "controlled substance offense" for two independent reasons. First, after the Fourth Circuit's decision in *United States v.*

*Campbell*, 22 F.4th 438 (4th Cir. 2022), Mr. Johnson's Maryland felony drug convictions no longer qualify as a "controlled substance offense" because, like the statute at issue in *Campbell*, Maryland distribution and PWID criminalizes the attempted transfer of drugs. Indeed, both Judge Chuang (in United States v. Young, Case No. TDC-22-0005 (D. Md. Jan. 4, 2023)) and Judge Bennett (in *United States v. Branch* , Case No. RDB-21-0145 (D. Md. Jan. 13, 2023)) have held that a Maryland distribution offense never qualifies as a "controlled substance offenses" because it criminalizes the "attempted transfer" of drugs. See **Exhibit 4** (Sentencing Transcript, at 6-8, United States v. Young, Case No. TDC-22-0005 (D. Md. Jan. 4, 2023)); **Exhibit 5** (Sentencing Transcript, at 57-58, United States v. Branch, RDB-21-0145 (D. Md. Jan. 13, 2023)). This Court should find the same.

Second, Maryland's cocaine provision,  (as it existed at the time of Mr. Johnson's prior Maryland drug felony convictions) included ioflupane, but Maryland's current cocaine provision (which now incorporates the Federal Controlled Substances Act (CSA)'s definition of cocaine, 21 U.S.C. § 812) excludes ioflupane. Due to this categorical mismatch, Mr. Johnson's prior Maryland drug felony convictions are not for a "controlled substance offense" for purposes of the career offender guideline, U.S.S.G.  § 4B1.2(b).

On September 28, 2022, Judge Grimm agreed with this argument as applied to a 2010 Maryland cocaine conviction, holding that it did not qualify as a § 4B1.2(b) controlled substance offense in *United States v. Duckett*. See **Exhibit 6** (Sentencing Transcript, at 7-13, *United States v. Duckett*, Crim. Case No. PWG-19-229 (D. Md. Sept. 28. 2022)). Judge Grimm's decision in *Duckett*

follows from, and cites to, Judge Chuang's decision in *United States v. Keaton*, TDC-18-0215 (ECF

No. 146), holding that a prior Maryland 1995 cocaine conviction failed to qualify as a "serious drug

offense" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(A)(ii)—a decision

the government chose not to appeal. See **Exhibit 3** (Sentencing Transcript at 24-30, *United States*

*v. Keaton*, Crim. Case No. TDC-18-0215 (June 1, 2022)). The same reasoning in *Keaton* applies to

disqualify Mr. Johnson's prior cocaine convictions as a § 4B1.2(b) "controlled substance offense."

    **A.**    **The categorical approach applies in determining whether a prior offense constitutes a "controlled substance offense" under U.S.S.G. § 4B1.2(b).**

"Controlled substance offense" means "an offense under federal or state law, punishable by

imprisonment for a term exceeding one year, that prohibits the manufacture, import, export,

distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession

of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export,

distribute, or dispense." U.S.S.G. § 4B1.2(b). This same definition is used in § 2K2.1 to determine

whether the base offense level should be increased.

The categorical approach applies in determining whether a prior conviction qualifies as a §

4B1.2(b) "controlled substance offense" as defined above. Under this approach, a prior offense only

constitutes a controlled substance offense if the "least culpable" conduct encompassed under the

elements of the offense satisfies the § 4B1.2(b) "controlled substance offense" definition. *United*

*States v. Campbell*, 22 F.4th 438, 441 (4th Cir. 2022). In other words, a prior conviction only

qualifies "if all of the ways of violating the statute, including the least culpable, satisfy the

Guidelines' definition" of a "controlled substance offense." *United States v. Walker*, 858 F.3d 196, 199 (4th Cir. 2017).

> **1.    Maryland distribution is not a "controlled substance offense" under U.S.S.G. § 4B1.2(b) because it criminalizes the attempted transfer of drugs.**

Applying the categorical approach here, the Fourth Circuit's decision in *Campbell* establishes that a Maryland distribution offense (Md. Code, Crim. Law § 5-602(1)) as it existed in 2012 and earlier (at the time of all of Mr. Johnson's prior Maryland drug convictions) and as it exists now, is not a § 4B1.2(b) "controlled substance offense" because it can be committed by the *attempted* transfer of drugs.

Indeed, in *Campbell*, the Fourth Circuit held that drug offenses criminalizing the attempted transfer of drugs categorically fail to qualify as § 4B1.2(b) "controlled substance offenses." 22 F.4th at 443-45. The Court reasoned that even though attempts are included in the commentary to § 4B1.2 (U.S.S.G. § 4B1.2 appl. n.1), that commentary adds to (rather than interprets) the guidelines text of the § 4B1.2 "controlled substance offense" definition, which only lists completed offenses (not inchoate offenses). *Id*. at 444. Because the commentary adds to the text of the § 4B1.2(b) guideline (and therefore is plainly inconsistent with the text), the Fourth Circuit held that it has no legal force under the Supreme Court's decision in *Stinson v. United States*, 508 U.S. 36 (1993). *Id*. Thus, the Court held that offenses which can be committed by attempting the transfer of drugs (i.e., inchoate offenses) never constitute "controlled substance offenses" under the guidelines. *Id*.

Under these terms, the Fourth Circuit held that the West Virginia statute, which criminalizes the delivery of drugs under W. Va. Code § 60A-4-401(a), altogether fails to qualify as a § 4B1.2(b) "controlled substance offense." Even though *Campbell* was convicted for the actual delivery of drugs, the West Virginia definition of "deliver[]" includes the "attempted transfer" of drugs. W. Va. Code § 60A-1-101(h). Therefore, the Fourth Circuit ruled that no offense under the delivery statute could ever qualify as a "controlled substance offense." *Id.* at 444.

The Fourth Circuit recently confirmed the same with respect to a North Carolina statute criminalizing the delivery of drugs under N.C. Gen. Stat. § 90-87(7). *United States v. Locklear*, 2022 WL 2764421 (4th Cir. 2022). Because that statute defined "delivery" to include "attempted transfer" of drugs, the Fourth Circuit concluded that it also plainly failed to qualify as a § 4B1.2(b) "controlled substance offense" under *Campbell's* dictate—despite the government's desperate attempt to run from *Campbell. Id.* at *2-3.

The Maryland distribution statute (Md. Code, Crim. Law § 5-602(1)) at issue here is identical to the above-discussed statutes. Like the West Virginia and North Carolina delivery statutes, the Maryland distribution statute expressly criminalizes the "deliver[y]" of drugs, which, in turn, includes the "attempted transfer" of drugs. See Md. Code, Crim. Law 5-101(I) & (m) (2021) (formerly Md. Code, Crim. Law 5-101(h) and (1) (2008)). Applying the categorical approach here, because Maryland distribution can be committed by the attempted transfer of drugs, it simply cannot qualify as a "controlled substance offense" after *Campbell*. Judge Bennett and Judge Chuang held

exactly that in *Branch* and *Young*. See **Exhibit 4** (Sentencing Transcript, at 6-8, *United States v. Young*, Case No. TDC-22-0005 (D. Md. Jan. 4, 2023)); **Exhibit 5** (Sentencing Transcript, at 57-58, *United States v. Branch*, RDB-21-0145 (D. Md. Jan. 13, 2023). This Court should find the same.

      **B.**      **Mr. Johnson's Maryland PWID and manufacture/distribution convictions fail to qualify as a § 4B1.2(b) "controlled substance offense" because of a categorical mismatch between Maryland's cocaine provisions as it existed in at the time of Mr. Johnson's prior convictions and as it exists now.**

      Alternatively, Mr. Johnson's PWID cocaine and Manufacture/Distribution cocaine convictions are not for a § 4B1.2(b) "controlled substance offense" because, prior to 2020, Maryland's cocaine provision was defined more broadly than Maryland's current cocaine provision. Specifically, the prior provisions included the substance of ioflupane (Md. Code, Crim. Law § 5-403(b)(3) (2008)), but Maryland's current cocaine provision (which adopted the cocaine definition under the Federal Controlled Substances Act) excludes ioflupane (Md. Code, Crim. Law § 5-403(a)(2) (2022)).

      This categorical mismatch disqualifies Mr. Johnson's cocaine priors as a § 4B1.2(b) "controlled substance offense."

      **1.**      **Under Fourth Circuit law, a prior state drug offense only qualifies as a § 4B1.2(b) "controlled substance offense" if the state's definition of a drug as it existed at the time of the prior conviction matches the current state definition of the drug.**

      The Fourth Circuit's recent decision in *United States v. Hope*, 28 F.4th 487, 504 (4th Cir. 2022), read in conjunction with the decision in *United States v. Ward*, 972 F.3d 364, 371 (4th Cir.

2020), clarifies the framework that applies in determining whether a prior state drug offense qualifies as a § 4B1.2(b) "controlled substance offense."

In *Hope*, the Fourth Circuit held that in determining whether an offense qualifies as a "serious drug offense" under the ACCA, a federal sentencing court must compare the elements of the prior state conviction (that existed at the time of the prior conviction) with the current Federal Controlled Substances Act definition (that exists at the time of the federal sentencing). 28 F.4th at 504-05. If there is not a match, the inquiry ends, and the prior is not an ACCA predicate. Applying this analysis, in *Hope*, the Court found that the defendant's prior 2013 South Carolina convictions for marijuana did not qualify as an ACCA predicates. Id. at 505-06. The Court explained that at the time of the 2013 state convictions, South Carolina defined marijuana to include hemp, but by the time of Mr. Hope's sentencing, the current Federal Controlled Substances Act definition of marijuana excluded hemp. Id. Due to this categorical mismatch, the Fourth Circuit held that the South Carolina priors were not ACCA "serious drug offenses." *Id*.

Importantly, in finding that the current federal definition of the Controlled Substances Act applies to the ACCA "serious drug offense" definition, the Court heavily analogized to the federal sentencing guidelines law. *Id*. at 505-08. Specifically, the Court relied on the following authority involving the guidelines to conclude that the current federal definition at the time of the sentencing serves as the comparator in ACCA cases:

- 18 U.S.C. § 3553(a)(4)(A)(ii), which requires that the district court must use the guidelines that are in effect on the date that the defendant is sentenced.

11

- U.S.S.G. §1B1.11, which also requires that the district court use the manual that is in effect on the date that the defendant is sentenced

- *United States v. Bautista*, 989 F.3d 698, 703 (9th Cir. 2021) (holding that the § 4B1.2(b) "controlled substance offense" definition is determined by current law at time of federal sentencing because "it would be illogical to conclude that federal sentencing law attaches 'culpability and dangerousness" to an act that, at the time of sentencing, Congress has concluded is *not* culpable and dangerous. Such view would prevent amendments to federal criminal law from affecting federal sentencing and would hamper Congress "ability to revise federal criminal law").

- *United States v. Abdulaziz*, 998 F.3d 519, 531 (1st Cir. 2021) (holding the same as Bautista).1

*Hope*, 28 F.4th at 505-08, 513 n. 3.

Because the Fourth Circuit in *Hope* heavily relied on guidelines law to hold that the current definition applies to define the federal comparator in the ACCA context, it logically follows that the current law should apply to define the comparator in the § 4B1.2(b) "controlled substance "context too. In fact, the argument for applying current law to define "controlled substance offense" in § 4B1.2(b) is even stronger than that for the ACCA "serious drug offense" definition because as referenced above, the guidelines (U.S.S.G. § 1B1.11 and § 3553(a)).unlike the ACCA - explicitly call for current law to apply in the sentencing guidelines context.

To be sure, there is a difference between the ACCA analysis versus § 4B1.2(b) analysis. In *Ward*, 972 F.3d at 371, the Fourth Circuit held that unlike the ACCA "serious drug offense definition" (which is determined by the federal Controlled Substances Act), the § 4B1.2(b) "controlled substance offense" definition for a prior state offense is determined by whatever "is

12

regulated" under state law. But this does not change the key point that both the ACCA "serious drug offense" comparator and the § 4B1.2(b) "controlled substance offense" comparator are defined by current law. The only difference in the analysis is the following:

- In the ACCA context, a prior state drug offense only qualifies as a "serious drug offense" if the state definition of the drug (as it existed at the time of the prior conviction) matches the *current federal definition* of the drug under the Controlled Substances Act (*as it exists at the time of the federal sentencing*).

- But in the § 4B1.2(b) context, a prior state drug offense only qualifies as a "controlled substance offense" if the state definition of the drug (as it existed at the time of the prior conviction) matches the *current state definition of the drug (as it exists at the time of the federal sentencing*).

This analysis is consistent with the Supreme Court's decision in *Dorsey v. United States*, 567 U.S. 260, 275-76 (2012) and the Sentencing Reform Act. In *Dorsey*, the Court explained that the Sentencing Reform Act of 1984 established a background sentencing principle that absent an ex post facto violation, the sentencing law that applies is the law in effect on the date the defendant is sentenced. *Id*. This permits the Sentencing Commission to "reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice process," 18 U.S.C. ¶ 991(b)(1), and to ensure that sentences under the federal sentencing guidelines take into account the evolving "community view of the gravity of the offense," and "the public concern generated by the offense." 18 U.S.C. § 994(c)(4), (5). These animating principles of the Sentencing Reform Act and the U.S. Sentencing Guidelines counsel against interpreting  "controlled substance" in § 4B1.2(b) to encompass an outdated state definition of a drug that no longer exists at the time of the

federal sentencing.

Thus, although under *Ward*, the § 4B1.2(b) "controlled substance offense" definition is determined by state law, the state law must be current. In other words, as Judge Grimm explained in Duckett, a prior state drug crime only qualifies as a § 4B1.2(b) "controlled substance offense" if the definition of the drug of conviction (as it existed at the time of the prior conviction) matches the current state definition of the drug. See **Exhibit 6** (*United v. Duckett*, Case No. PWG-19-229, Excerpt of Sentencing Transcript, at 11-13).

> **2.    Mr. Johnson's Maryland cocaine convictions are not for a § 4B1.2(b) "controlled substance offense" because the Maryland cocaine provisions as it existed at the time of the prior convictions criminalized ioflupane, but the current Maryland definition does not.**

Applying the above-discussed framework here, there is a categorical mismatch between the 2012 (and earlier) Maryland cocaine provision and the current Maryland cocaine provision, because the 2012 cocaine definition included ioflupane, but the current definition does not. Therefore, under the terms of *Ward* and *Hope*, if Mr. Johnson were sentenced today, his prior conviction would categorically fail to constitute a § 4B1.2(b) "controlled substance offense."

At the time of Mr. Johnson's prior convictions, the Maryland cocaine provision in Schedule II (Md. Code, Crim. Law § 5-403(b)(3) (2008)) criminalized "ecgonine" and "its derivatives" which, in turn, included "ioflupane" because that substance is a derivative of ecgonine. See **Exhibit 7** (Expert Affidavit used in **Keaton**). It was only in 2020 that Maryland changed the cocaine provision to exclude ioflupane. Md. Code, Crim. Law § 5-403(b)(4)(ii) (2020). The Maryland 2020 cocaine

14

provision included the following:

> (4) coca leaves and any salt, compound, derivative, or preparation of coca leaves, including cocaine and ecgonine and their salts, isomers, derivatives and salts of isomers and derivatives, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances may not include:
>
> > (I) decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine; or
> >
> > (ii) ioflupane.

Md. Code, Crim. Law § 5-403(b)(4)(ii) (2020). The 2020 version included ecgonine derivatives, but it expressly excepted ioflupane from qualifying as a Schedule II substance. *Id.*

And today, the Maryland definition continues to exclude ioflupane from its cocaine definition because effective June 1, 2022, Maryland adopted the federal Controlled Substances Act drug definitions. Md. Code, Crim. Law §§ 5-402-5-406. And the federal Controlled Substances Act expressly excludes ioflupane from its federal schedules. "Ioflupane, was by definition, a schedule II controlled substance because it derived from cocaine via ecgonine, both which are schedule II controlled substances." Schedules of Controlled Substances: Removal of [123 I] Ioflupane from Schedule II of the Controlled Substances Act, 80 Fed. Reg. 54715, 54716. However, the Attorney General (pursuant to his authority under 21 U.S.C. § 811) removed ioflupane from its list of cocaine-related substances in Schedule II in September 2015. 80 Fed. Reg. 54715. Since that time, ioflupane has not been included on any federal drug schedule. 21 C.F.R. § 1308.12(b)(4)(ii) ("except[ing]" ioflupane I from current Schedule II) (2022). In turn, current Maryland law, which

15

tracks federal law, excludes ioflupane from its cocaine provision.

Because Maryland cocaine law at the time of Mr. Johnson's prior convictions criminalized ioflupane, but the current Maryland law (which is the same as federal law) does not, Mr. Johnson's prior cocaine convictions are not for a § 4B1.2 "controlled substance offense."

Judge Grimm's recent decision in Duckett, Case No. PWG-19-0229, is directly on point. In that case, applying *Hop*e and *Ward*, Judge Grimm held that a prior Maryland 2010 cocaine conviction failed to qualify as a § 4B1.2(b) "controlled substance offense" because in 2010 (just like in 2008), the Maryland cocaine provision included ioflupane (as a derivation of ecgonine), but the current federal definition of cocaine under the Controlled Substances Act does not. See **Exhibit 6** (*United v. Duckett*, Case No. PWG-19-229, Excerpt of Sentencing Transcript, at 7-13).

Likewise, the Ninth Circuit's decision in *United States v. Holliday*, (9th Cir. 2021), interpreting a similar Montana provision, concluded the same. In that case, the Ninth Circuit held that "Montana's relevant drug schedules are categorically overbroad . . . . The Montana schedules include cocaine derivatives, Mont. Code Ann. § 50-32-224(1)(d), while the federal statutory drug schedules do not, see 21 U.S.C. § 812© Schedule II(a)(4)." Id. at 54 (internal quotation marks omitted). The Court explained that, while the federal drug schedules "were recently amended to specifically exclude 'ioflupane' from the list of cocaine-related substances[,] 21 C.F.R. § 1308.12(b)(4) . . . . [t]he Montana schedules, on the other hand, include cocaine and ecgonine and their . . . derivatives without any exception for ioflupane. Mont. Code Ann § 50-32-224(1)(d)." Id.

(internal quotation marks omitted).2

---

[2]FN 2 Contrary to Judge Grimm's decision in Duckett, Judge Chuang (in *United States v. Kyler*, Crim. Case No. TDC-21-497) and Judge Bennett (in *United States v. Branch*, Case No. RDB-21-0145) recently rejected the defendants' ioflupane arguments upon finding that *Hope's* current-law framework does not apply to the guidelines. Judge Chuang and Judge Bennett reasoned that Hope was an ACCA case in which the "serious drug offense" definition is defined by the federal drug schedules under the CSA, whereas the § 4B1.2(b) "controlled substance offense" definition (as required by the Fourth Circuit's decision in *United States v. Ward*, 972 F.3d 364, 371 (4th Cir. 2020)) is determined by "state law." See **Exhibit 5** (Sentencing Transcript, at 47-48, *United States v. Branch*, RDB-21-0145 (D. Md. Jan. 13, 2023)

But, as Judge Grimm noted in *Duckett*, this distinction has nothing to do with the current-law holding of Hope. See **Exhibit 6** (*United v. Duckett*, Case No. PWG-19-229, Excerpt of Sentencing Transcript, at 7-13). Rather, *Hope* tells us that, whether the comparator is defined by the federal CSA (ACCA) or state law (§ 4B1.2(b)), it is determined by looking to current law. It is plain that *Hope's* current-law ruling also applies to the guidelines because the Court relied on the reasoning of a guidelines case (*Bautista*, 989 F.3d at 703) to hold that the current-law "time-of-sentencing" rule applies to the ACCA. *Hope,* 28 F.4th at 505; see also *Payne v. Tuslini*, 998 F.3d 648, 655 (4th Cir. 2021) ("If necessary to the outcome, a precedent's reasoning must be followed[.]").

There is no reason why the current-law logic of *Hope* does not equally apply to § 4B1.2(b). If the prior state law, as it existed at the time of the prior conviction, included a substance that has been decriminalized under the current state law, then the state no longer considers it a culpable and dangerous drug; in turn, it is not a § 4B1.2(b) "controlled substance offense" that should increase one's federal sentence. If the sentencing court looks only to state law from the time of the prior conviction, a defendant could be subject to a multi-year enhancement for something the state has since concluded is not culpable and dangerous. That is particularly troubling, given the extremely harsh penalties that result from predicate-offense enhancements. Therefore, this Court should adopt Judge Grimm's decision in Duckett (which adheres to Hope)—not Kyler or Branch on this point. In *Branch*, Judge Bennett further criticized Judge Grimm's Duckett decision upon noting that it did not address United States v. Johnson, 945 F.3d 174, 183 (4th Cir. 2019). But that decision has zero relevance here. See **Exhibit 5** (Sentencing Transcript, at 47-48, United States v. Branch, RDB-21-0145 (D. Md. Jan. 13, 2023). In Johnson, the defendant argued that a Maryland possession with intent to distribute offense fails to qualify as a "controlled substance offense" because it can be committed by offering to sell drugs. Id. The Fourth Circuit rejected that argument. Id. However, the Fourth Circuit never touched upon the ioflupane cocaine issue. That issue was not briefed, addressed, or decided. Therefore, Johnson is irrelevant. See United States v. Norman, 935 F.3d 232, 240 (4th Cir. 2019) ("an unchallenged and untested assumption is simply not a holding that binds future courts"); Id. (a decision is not controlling on an issue "not raised, not argued, and hence not analyzed") (citation omitted).

Because the same categorical mismatch exists between the prior Maryland cocaine law (which included ioflupane—via ecgonine derivatives) and current Maryland (which excludes ioflupane), it necessarily follows that Mr. Johnson's 2012 and earlier prior cocaine convictions are not for a § 4B1.2(b) "controlled substance offense."

Therefore, Mr. Johnson's guidelines for his conviction under Groups 1 (Counts One, Three and Four of the third superseding indictment) should not be based on the Career Offender guideline.

## CONCLUSION

Mr. Johnson does not qualify for sentencing enhancements under the ACCA or the Career

Offender provisions of the United States Sentencing Guidelines.

Respectfully submitted,


/S/
_____
JOSEPH A. BALTER          #04496
Law Office of Joseph A. Balter, LLC
Mt. Washington Mill
1340 Smith Avenue, Ste 200
Baltimore, Maryland 21201
Telephone:  (410) 375-7082
Facsimile:  (410) 779-1201
Email:        joseph@josephbalterlaw.com